Belknap
No. 7859

J. J. MORIN, INC.

v.

93 CLEARING HOUSE, INC. &
AMIN KHOURY, DOMENIC COLETTA,
JAMES MARTIN & ROBERT KHOURY,
d.b.a. CAMPTON REALTY ASSOCIATES

January 23, 1978

*Sanders & McDermott,* of Hampton (*Patricia McKee* orally), for the defendant 93 Clearing House, Inc.

*Hall, Morse, Gallagher & Anderson,* of Concord (*Charles T. Gallagher* orally), for the defendant Campton Realty Associates.

BOIS, J. Plaintiff seeks to recover from 93 Clearing House, Inc. (Clearing House) and Campton Realty Associates (Campton Realty) for labor, materials and services furnished to 93 Clearing House, Inc., on the ground as to Campton Realty that it had as-

sumed the obligation of Clearing House. Hearing was held before a Master (*Leonard C. Hardwick,* Esq.), who recommended that a verdict be entered for the plaintiff against Clearing House and that the action against Campton Realty be dismissed. The recommendation was approved by the Court (*Batchelder,* J.). Clearing House seasonably excepted to certain rulings during the course of the trial; to the verdict; to the dismissal with respect to Campton Realty; and to the denial of its motion for reconsideration. All exceptions were reserved and transferred by *Keller,* C.J. We affirm.

Plaintiff supplied materials for and held a materialman's lien on the so-called "Overlook Condominiums" project being built by the defendant Clearing House. The balance due at the time of trial was stipulated to be $6,650.

In the spring of 1974, Clearing House entered into an agreement with Campton Realty to have it take over the balance of the project. The dispute centers on whether Campton Realty agreed to assume Clearing House's debts.

Officers of the plaintiff and the two defendants signed the following:

## RELEASE OF LIEN

DATE: 4/11/74

J. J. Morin, Inc., creditor, hereby acknowledges and agrees that the sum of $7183.52 is due and owing from "93" Clearing House, Inc. for materials and labor supplied to the Overlook Condominium Units 1–44, so-called, in Campton, New Hampshire and agrees to waive all liens including liens as provided by NHRSA Chap. 447 which the creditor might have on any of the Overlook Condominium Units, up to and including the date of this release.

"93" Clearing House, Inc. agrees that there are remaining to be sold 14 units in said Condominium, which units are about to be sold to Campton Realty Associates, a partnership, and "93" Clearing House, Inc. and Campton Realty Associates agree that in consideration of this release of lien, the sum of $7183.52 shall be paid to the creditor out of the proceeds of the sale of each remaining 14 Condominium Units.

> In no event shall the proceeds of the sale of each one bedroom unit be less than $366.08, and the proceeds of each two bedroom unit be less than $522.97.

The Overlook creditors who refused to accept pro rata payments, as provided above, were immediately paid in full by Campton Realty. On or about November 4, 1974, upon the sale of one unit, one payment was made to the plaintiff and to several other creditors who had accepted the arrangement. The Manchester Bank, mortgagee, eventually foreclosed and took over the project, whereupon this action was brought.

At the hearing, the plaintiff and Clearing House contended that Campton Realty assumed Clearing House's obligation to the plaintiff. They introduced the Release of Lien, oral testimony and letters allegedly mailed by or to Campton Realty, which they claim prove the assumption of the debt. Campton Realty contends that it agreed to pay the plaintiff only if it sold condominium units and that the release of lien indicates no other agreement. It also argues that no other written or oral evidence should be taken into consideration as bearing on the parties' intentions because the Statute of Frauds, RSA 506:2, applies, and no other document other than the release was signed by it as a party sought to be "charged." The statute directs that "[n]o action shall be brought . . . to charge any person upon a special promise to answer for the debt . . . of another . . . unless such promise or agreement, or some note or memorandum thereof, is in writing and signed by the party to be charged . . . ."

The master's report, recommending the verdict against Clearing House and dismissal of the action against Campton Realty, in part states:

> The only defense that 93 Clearinghouse, Inc., offered to the action was that the Campton assumption of the obligation relieved Clearinghouse. The master is unable to find in the evidence that this was a valid agreement in [sic] the part of the plaintiff to so relieve Clearinghouse.

Reversal is sought on the ground that the master erroneously believed the Statute of Frauds applied and that he excluded from consideration any evidence except the release. Clearing House argues that if the release of lien had been read and considered in conjunction with the other written and oral evidence, then the

master would have found an assumption by Campton Realty of the Clearing House debt owed to the plaintiff and would have relieved Clearing House of any liability.

 Examination of the master's report reveals that he did not limit the scope of his inquiry. This is borne out by the ruling denying Clearing House's requests for findings that Campton Realty "by letters dated April 26, 1974 and May 29, 1974, acknowledged assumption of the liability owing to the plaintiff" and that "from the testimony of a former officer of the . . . bank, it was the understanding by said officer . . . that Campton Realty Associates, had in fact assumed the liability of the plaintiff's claim and agreed to pay same." Similarly two requests were denied for rulings of law "[t]hat it appears from *all* of the evidence" (emphasis added) that Campton Realty is liable to the plaintiff. The master did not hold that he was unable to pass on these questions because the evidence they refer to was inadmissible, but rather that he was unable to find *"in the evidence"* (emphasis added) that a valid agreement was made that would relieve Clearing House from liability to the plaintiff.

The master considered all evidence submitted, and concluded that the only promise made by Campton Realty was to make pro rata payments as condominium units were sold. We note that this is a fair reading and interpretation of the document. There being ample evidence to support this finding, it must stand. *Clark v. Lake Shore Farm, Inc.,* 117 N.H. 953, 379 A.2d 1270 (1977).

 Clearing House also claims error in the denial of its motion for reconsideration. It argues that a new trial should have been granted because consideration of "newly-discovered letters" would "in all probability" change the outcome of the case. The record reveals no mention of such documents in the motion for reconsideration, which apparently refers to exhibit 4 for identification. Nor do these letters themselves appear anywhere else but by reference in Clearing House's brief. They apparently were not presented to the master, so that his recommendation to deny the motion cannot be impeached by them. Moreover, such a motion should be granted only when (1) the moving party was not at fault in not discovering the evidence in time to present it at the trial (2) the evidence is admissible, material and not cumulative and (3) it is of such a character that a different result will proba-

bly be reached at the rehearing. *Burroughs v. Wynn*, 117 N.H. 123, 370 A.2d 642 (1977). The record is devoid of any such showing and we hold that the above test was not met and that the denial of the motion was proper.

In view of our holding, we need not reach other issues raised in this appeal.

*Exceptions overruled.*

LAMPRON, J., did not participate in the decision of this case; the others concurred.